## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ZACHARY T. PAINTER**

        Plaintiff,

    vs.                            No. 1:07-cv-0395 MCA/ACT

**WELLS FARGO BANK, N.A., et al.**

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants' *Wells Fargo Bank N.A.'s and Melanie J. Garcia's Motion to Dismiss* [Doc. 8], filed April 30, 2007. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court concludes that the Motion should be **granted in part and denied in part**.

## I.    BACKGROUND

Plaintiff Zachary Painter initiated this action by filing a complaint in the Second Judicial District Court, County of Bernalillo, State of New Mexico, on March 21, 2007. He filed an Amended Complaint on April 4, 2007. The case was removed to federal court on April 24, 2007.

The Amended Complaint asserts claims against two sets of defendants: Wells Fargo Bank, N.A. and one of its employees, Melanie Garcia (the Wells Fargo Defendants) and the City of Albuquerque and several of its police officers (the Governmental Defendants). All claims arise out of an incident that occurred in August 2006 when Mr. Painter was arrested

on the premises of a Wells Fargo Bank branch in Albuquerque, New Mexico.

The facts alleged can be summarized as follows.  Mr. Painter owns a convertible Mustang automobile.  In June 2006, he decided to sell the Mustang and placed an advertisement with an online Internet automobile marketplace.  He offered the car at a price of $28,000.  A prospective buyer appeared and agreed to send Mr. Painter a cashier's check for $36,000.  The buyer explained that the additional $8,000 would be used to offset shipping, taxes, and repair costs.  [Doc. 4-2, ¶¶ 7–11.]

Mr. Painter received an envelope containing the promised cashier's check, made payable to him, on the afternoon of August 1, 2006.  That same afternoon, he took the check to Wells Fargo, where he maintained a checking account.  Wells Fargo pamphlets and posters instruct customers who are concerned about the validity of a check to "notify a Wells Fargo Team Member immediately."  [Doc. 4-2, ¶¶ 15–18.]

Mr. Painter wanted to inquire about the validity of the check, so he asked to speak to a customer service associate rather than a teller.  He was taken to see Defendant Garcia, who is a Wells Fargo Personal Banker, and met with her in her office.  He explained to her that he had arranged to sell his car over the Internet and had received the cashier's check in the mail from the buyer.  [Doc. 4-2, ¶¶ 19–21.]

Mr. Painter asked Ms. Garcia to determine whether there were funds available for the cashier's check and if so, how soon the funds would be available.  He did not endorse the check or ask Ms. Garcia to cash it.  Ms. Garcia said she would need to call the bank that issued the check to determine whether funds were available.  She took the check into a back

2

room while Mr. Painter waited.  Ms. Garcia returned a few minutes later and told him it would take a while longer because she was having difficulty contacting the bank.  She asked for and obtained his driver's license.  [Doc. 4-2, ¶¶ 22–24, 28–29, 32–33.]

Unbeknownst to Mr. Painter, Ms. Garcia and her manager had learned from a check verification company that the check had been paid over one year before.  They did not inform Mr. Painter of this fact and decided to call the police without alerting him.  Ms. Garcia called 911 and told the dispatcher that Mr. Painter was"trying to cash a fraudulent check."  [Doc. 4-2, ¶¶ 36–37, 39.]

Defendant police officers arrived shortly thereafter.  Mr. Painter had left Ms. Garcia's officer and gone into the corridor to get a drink of water when he observed them entering the building.  The officers approached Mr. Painter and asked his name.  When he identified himself, they ordered him to turn around and place his hands on top of his head.  The officers then escorted him outside.  [Doc. 4-2, ¶¶ 22–24, 28–29, 32–33.]

Ms. Garcia meanwhile advised the 911 operator that "they got him" and then "enthusiastically" thanked the operator.  The police officers searched Mr. Painter's truck, interrogated Mr. Painter and took written statements from Ms. Garcia and the branch manager.  In her statement, Ms. Garcia wrote that Mr. Painter told her "he sold his car and wanted to cash this check, or get cash back today and how much."  [Doc. 4-2, ¶¶ 50–51, 54, 59, 68–69.]

The Defendant police officers filed a criminal complaint against Mr. Painter, charging him with fraud in an amount greater than $20,000, which is a second degree felony.  The

3

district attorney dismissed the charge approximately six months later.  [Doc. 4-2, ¶¶ 93, 100.]

Mr. Painter asserts five tort causes of action against the Wells Fargo Defendants based upon Ms. Garcia's telephone call to the 911 operator and her written statement to the police. The Wells Fargo Defendants move to dismiss all counts against them for failure to state a claim upon which relief can be granted pursuant to Fed.R. Civ. P. 12(b)(6).[1]

## II.    LEGAL STANDARDS

Until recently, a motion to dismiss for failure to state a claim was granted only if it appeared beyond doubt that the plaintiff could prove "no set of facts in support of his claim which would entitle him to relief."  Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99 (1957)).  In a case decided shortly after this motion was filed, however, the Supreme Court concluded that this oft-quoted language has "earned its retirement."  Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1969 (2007).  Conley, according to the Supreme Court, "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  Twombly, 127 S.Ct. at 1969.

In order to survive a motion to dismiss now, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Twombly, 127 S.Ct. at 1969).  While a complaint attacked under Rule 12(b)(6) does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of the entitlement to relief "requires more than

---

[1]The claims against the Governmental Defendants are not at issue on this motion.

4

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964–65 (citations omitted). The complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of the alleged conduct. See Twombly, 127 S.Ct. at 1965.

The Court still accepts as true all well-plead allegations, and views them in the light most favorable to the plaintiff. Ridge at Red Hawk, LLC, 493 F.3d at 1177. "Well-plead," however, means that the allegations are "plausible, non-conclusory, and non-speculative." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., No. 06-1458, ___ F.3d ___, 2008 WL 217724, at *3 (10th Cir. Jan. 28, 2008). The factual allegations must be enough to raise a right to relief above the speculative level. Twombly, 127 S.Ct. at 1965. Overall, the complaint must "possess enough heft" to show that the pleader is entitled to relief. Twombly, 127 S.Ct. at 1965–66.

## III.  ANALYSIS

The Court addresses below each of the claims asserted in the Amended Complaint against the Wells Fargo Defendants, in the order the claims are presented in the motion.

### A.    Malicious Abuse of Process (Count XI)

Mr. Painter asserts a claim for malicious abuse of process against the Wells Fargo Defendants. The elements of this cause of action are as follows:

(1)  the initiation of judicial proceedings against the plaintiff by the defendant;

(2)  an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim;

(3)  a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and

(4)  damages.

Fleetwood Retail Corp. of N.M. v. LeDoux, 164 P.3d 31, 35 (N.M. 2007).

The Wells Fargo Defendants argue that the malicious abuse of process claim should be dismissed because the statements Ms. Garcia made to the police were substantially true. Mr. Painter, on the other hand, argues that he has adequately plead the cause of action because he alleges Defendant Garcia knowingly provided false information to authorities.

The New Mexico Supreme Court apparently does recognize that in some circumstances, a malicious abuse of process claim may lie against a defendant who knowingly communicates materially false information to authorities.  WestStar Mortgage Corp. v. Jackson, 61 P.3d 823, 830–31 (N.M. 2002).  It also recognizes, however, that "[e]fficient law enforcement requires that a private person who aids the police by giving honest, even if mistaken, information about a crime, should be given effective protection from civil liability."  WestStar Mortgage Corp., 61 P.3d at 831 (quoting Zamora v. Creamland Dairies, Inc., 747 P.2d 923, 929 (N.M. Ct. App.)).  With this background in mind, the Court considers the relevant well-plead allegations in the Amended Complaint.

Mr. Painter entered a Wells Fargo Bank branch with a cashier's check for $36,000.82. [Doc. 4-2, ¶ 15.]  Because he wanted to inquire about the validity of the cashier's check, he asked to speak to a customer service associate, rather than a teller.  [Id. 4-2, ¶¶ 19–20.]  He met with Defendant Garcia in her office and explained to her that he had arranged for the sale

of his car over the Internet and had received the cashier's check in the mail from the buyer. [Id. ¶¶ 20–21.] He "asked Ms. Garcia to determine whether there were funds available for the cashier's check and if so, how soon the funds would be available." [Id. ¶ 22.] He never endorsed the check, nor did he expressly ask her to cash the check or to deposit funds from the cashier's check into his account. [Id. ¶¶ 23–26.]

Ms. Garcia took the check into a back room at the bank while Mr. Painter waited. [Doc. 4-2, ¶ 29.] After consulting with a check verification company, Ms. Garcia learned that the check had already been cashed over one year before. [Id. 4-2, ¶ 36.] She spoke with the branch manager, Denise Chavez, and decided to call the police without alerting Mr. Painter. [Id. 4-2, ¶¶ 36, 39.] Ms. Garcia did not tell him that the check already had been paid, nor did she ask him where the check came from.[2] [Id. ¶¶ 37–38.] Instead, she dialed 911 and stated to the dispatcher that Mr. Painter was "trying to cash a fraudulent check." [Id. ¶ 40.] After the police arrived, Ms. Garcia gave them a written statement saying Mr. Painter told her "he sold his car and wanted to cash this check, or get cash back today and how much." [Id. ¶ 69.]

The Court concludes that these allegations are not sufficient to state a plausible claim for malicious abuse of process. Mr. Painter characterizes Ms. Garcia's statements to the police as "false" and further alleges that she "knew" her statements were false. [Doc. 4–2, ¶¶ 39–40, 177–80.] Simply labeling the statements as "knowing," however, is not sufficient.

---

[2]Indeed, according to a previous allegation in the Amended Complaint, Painter had already told her that he had received the check in the mail from the buyer in connection with the internet sale of an automobile. [Doc. 4-2 ¶ 21.]

See Twombly, 127 S.Ct. at 1965.  His allegation that Ms. Garcia's statements were knowingly false appear to be based solely upon the difference between his asking Ms. Garcia whether and when funds would be available [Doc. 4-2, ¶ 22], and her reporting to authorities that he was "trying to cash a fraudulent check."  [Doc. 4-2, ¶ 39.]

This small discrepancy—if it can even be characterized as such—is not sufficient to support an inference that Ms. Garcia knowingly misinformed the police.  Because something beyond the mere possibility of entitlement to relief is required, the claim for malicious abuse of process against the Wells Fargo Defendants comes up short in the absence of any other well-plead factual allegations.

The Court has carefully reviewed the Amended Complaint and can discern no factual allegations that plausibly support an inference that Ms. Garcia knowingly reported false information to the police.  Mr. Painter argues that he was not intending to negotiate the check and points to allegations that Wells Fargo pamphlets and posters instruct customers concerned about the validity of a check to notify a Wells Fargo Team Member.  [Doc. 4-2, ¶ 17.]  These allegations, however, bear on Mr. Painter's state of mind, not Ms. Garcia's.  Viewed in Mr. Painter's favor, they support an inference that Mr. Painter did not have criminal intentions; it does not follow that Ms. Garcia therefore had a malicious intent or was acting with an improper purpose when she called 911.

The Court also cannot infer from allegations that Ms. Garcia "enthusiastically" thanked the police that she knowingly reported false information.  Simply thanking the police does not suggest she acted with an improper motive when calling them.

8

In concluding that the malicious abuse of process claim stops short of the line between possibility and plausibility, the Court has the benefit of New Mexico Supreme Court perspective on this selective cause of action.  It has repeatedly been held that the tort of malicious abuse of process is construed narrowly to protect the right of access to the courts. Fleetwood Retail Corp. of N.M., 164 P.3d at 37 (citing Devaney v. Thriftway Mktg. Corp., 953 P.2d 277 (N.M. 1998)).  The New Mexico Supreme Court counsels "the need for caution in reviewing malicious abuse of process actions" and emphasizes that citizens must have "wide latitude in reporting facts to authorities so as not to discourage the exposure of crime." WestStar Mortgage Corp., 61 P.3d at 831 (quoting Zamora, 747 P.2d at 929). The purpose of the tort of malicious abuse of process is to protect "a plaintiff who has been made the subject of legal process improperly, where the action was wrongfully brought by a defendant *merely for the purpose of vexing or injuring the plaintiff*...."  WestStar Mortgage Corp., 61 P.3d at  829 (quoting Devaney, 953 P.2d  277 (emphasis added)).

The cases cited in Mr. Painter's response, though factually and procedurally distinguishable, serve to illustrate the type of conduct that supports an inference of malice. In Benjamin v. Hooper Electric Supply Company, for example, the Supreme Court of Mississippi held that a jury could infer malice on the part of defendant salesman who, without any justifiable basis and possibly motivated by racial bias, took it upon himself to investigate the plaintiff by sneaking out to his car to search for stolen goods.  Benjamin v. Hooper Elec. Supply Co., 568 So.2d 1182, 1191–92 (Miss. 1990).

9

In another case cited in Mr. Painter's response, the plaintiff was arrested after defendants reported to the police that she had stalked them in her truck, that she had not shown up for work for two days because she was being investigated for stealing, and that they had run into a book store to get away from her because she was unstable and they were afraid of her.  Crocco v. Advance Stores, Co., 421 F.Supp.2d 485, 492–93 (D. Conn. 2006). The district court found that a jury could infer from these statements, which defendants admitted were false, that they acted with malice.  Crocco, 421 F.Supp.2d at 502.

By contrast, the Amended Complaint here alleges no facts that would support an inference that the Wells Fargo Defendants acted with a primary motive to accomplish an illegitimate end or for the purpose of "vexing or injuring" Mr. Painter.  All that is alleged is that Ms. Garcia called 911 and reported to police that Mr. Painter was trying to cash a fraudulent check after he presented her with a previously-cashed check and asked whether and when funds would be available to pay it.  The Amended Complaint does not allege that Ms. Garcia knew Mr. Painter, that she had any previous contact with him, or that she had any motive or desire to falsely accuse him.

After carefully examining the Amended Complaint, the Court concludes that the malicious abuse of process claim does not rise above the speculative level.  It contains no factual allegations that plausibly support an inference that Ms. Garcia knowingly made false statements to the police, or that she acted primarily for an improper purpose.  Accordingly, the malicious abuse of process claim against the Wells Fargo Defendants (Count XI) should be dismissed.

### B.      Defamation (Count X)

Mr. Painter asserts a defamation claim against the Wells Fargo Defendants based upon

Ms. Garcia's spoken statement to the 911 operator and her written statement to the police.

[Doc. 4-2, ¶¶ 170–71.]  Under New Mexico law, the elements of defamation include:

(1) a publication by the defendant;

(2) of an asserted fact;

(3) which is defamatory;

(4) communicated to a third person;

(5) of and concerning the plaintiff; and

(6) proximately causing injury to the plaintiff.

Schwartz v. Am. Coll. of Emergency Physicians, 215 F.3d 1140, 1144 (10th Cir. 2000).

In addition, a plaintiff must prove a certain level of culpability on the part of the

defendant.  A plaintiff who is a "public figure" must establish that the defendant acted with

actual malice, which means knowledge of falsity or reckless disregard of the truth.  Schwartz,

215 F.3d at 1144 (citing Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 510, 111 S.Ct.

2419 (1991)).  A plaintiff who is not a public figure need only meet an ordinary negligence

standard.  Schwartz, 215 F.3d at 1144 (citing Newberry v. Allied Stores, Inc., 773 P.2d 1231,

1236 (N.M. 1989); see also Marchiondo v. Brown, 649 P.2d 462, 470 (N.M. 1982) (adopting

ordinary negligence standard as measure of proof necessary to establish liability for

defamation of non-public plaintiff).

11

In moving to dismiss the defamation claim, the Wells Fargo Defendants ask the Court to conclude that Ms. Garcia's statements were "not substantially false." [Doc. 8 at 6.] On a motion to dismiss for failure to state a claim, however, the Court must view the facts alleged in the light most favorable to the Plaintiff. For purposes of this motion, the Court assumes that Mr. Painter is not a public figure. Accordingly, under New Mexico law:

> To support a claim for defamation, the defendant must have been negligent when defendant published the communication. The defendant must have failed to check on the truth or falsity of the communication prior to publication....An act, to be "negligent," must be one which a reasonably prudent person would foresee as involving an unreasonable risk of injury to the reputation of another and which such a person, in the exercise of ordinary care, would not do.

UJI 13-1009(B) NMRA 2007.

The Court concludes that the Amended Complaint adequately pleads a defamation claim under this formulation of the substantive law. As discussed above, the difference between what Mr. Painter told Ms. Garcia, and what she subsequently told police—even if viewed in the light most favorable to the Plaintiff—is not sufficient to support Mr. Painter's claim that she knowingly reported false information. The facts alleged in the Amended Complaint are sufficient, however, to plausibly support an inference that Ms. Garcia may have negligently made a false report.[3]

---

[3]In concluding that the defamation claim is sufficiently plead, the Court reaches no conclusions regarding the substantial truth or falsity of Ms. Garcia's statements to the police. The Court merely assumes that any inaccuracies, viewed in the light most favorable to Plaintiff's defamation claim, were not "insignificant" or "minor." See UJI 13-1006 NMRA 2007 ("Insignificant inaccuracies of expression are not sufficient [to render a communication false].; Schwartz, 215 F.3d at 1146 (observing that "[m]inor inaccuracies do not amount to falsity").

The Court declines to conclude, at this stage of the proceedings, that the Wells Fargo Defendants are protected by a qualified privilege.  Qualified privilege exists as a defense to defamation "where there is there is a good faith publication in the discharge of a public or private duty."  Bookout v. Griffin, 639 P.2d 1190, 1193 (N.M. 1982).  The Wells Fargo Defendants argue that qualified privilege applies because Ms. Garcia had reasonable grounds to believe that her statements to the police were true.  [Doc. 8, at 6–7.]  However, they have cited no authority showing that the defense arises under the circumstances alleged here. Furthermore, even when the privilege arises, it can be lost if it is abused.  UJI 13-1012 NMRA 2007 (listing circumstances under which privilege is abused).  In short, in the absence of any clear authority, the Court cannot conclude based on the pleadings alone, that a qualified privilege applies and that it has not been abused.

## C.    Negligence (Count IX)

The Amended Complaint likewise adequately states a claim for negligence. Negligence claims require: (1) the existence of a duty from a defendant to a plaintiff; (2) breach of that duty, which is typically based upon a standard of reasonable care; and (3) the breach being a proximate cause and cause in fact of the plaintiff's damages.  Chavez v. Desert Eagle Distrib. Co. of NM, LLC, 151 P.3d 77, 80 (N.M. Ct. App. 2006).

The Amended Complaint alleges: (1) Defendant Garcia had a duty to use ordinary care when making statements and reports to defendant police officers [Doc. 4-2, ¶ 163]; (2) she failed to use ordinary care by calling 911 and reporting that Mr. Painter was "trying to

13

cash a fraudulent check" and by submitting a written statement to police officers stating that Mr. Painter asked to "get cash back today" [Id., ¶¶ 164–65]; and (3) that Mr. Painter suffered various harms as a result [Id., ¶¶ 165–66].

The Wells Fargo Defendants argue that the negligence claim should be dismissed as an impermissible attempt to avoid the heightened evidentiary standards for defamation. [Doc. 18 at 9–10.]  The argument that Mr. Painter's negligence claim is incompatible with defamation fails to recognize that, in New Mexico, defamation of a private (non-public) plaintiff may be established by proving negligent conduct.

The Wells Fargo Defendants' argument that the negligence claim fails because Ms. Garcia acted reasonably under the circumstances is essentially an argument that she did not breach a duty.  [Doc. 8 at 7.]  Breach of duty, however, typically is a question of fact, or sometimes a mixed determination of fact and law, that cannot be adequately assessed until the nature of the duty is ascertained.  Herrera v. Quality Pontiac, 73 P.3d 181, 186, 194 (N.M. 2003).  The facts alleged in support of the negligence claim are sufficiently non-conclusory to nudge the claim across the line from possible to plausible.[4]

---

[4]By finding that Mr. Painter has adequately alleged the existence of a duty, the Court is not necessarily concluding that a duty exists.  The existence of a legal duty is a question of law involving a multi-step analysis that is not addressed by the parties' briefs.  See Herrera v. Quality Pontiac, 73 P.3d 181, 186 (quoting Ruiz v. Garcia, 850 P.2d 972, 975 (N.M. 1993) ("The existence of a tort duty is a policy question that is answered by reference to legal precedent, statutes, and other principles of law."); see also Chavez v. Desert Eagle Distrib. Co. of NM, LLC, 151 P.3d 77, 80–87 (N.M. Ct. App. 2006).  By concluding that the Amended Complaint sufficiently alleges negligence, the Court is concluding merely that the existence of a duty in these circumstances is plausible.

**D.      Negligence Per Se (Count VIII)**

Mr. Painter asserts a claim for negligence per se.  [Doc. 4-2, ¶¶ 151–61.]  Under New Mexico law, the test for negligence per se is:

(1) a statute that prescribes certain actions or defines a standard of conduct, either explicitly or implicitly;

(2) the defendant violates the statute;

(3) the plaintiff is in the class of persons sought to be protected by the statute; and

(4) the harm or injury to the plaintiff is generally of the type the legislature sought to prevent.

Archibeque v. Homrich, 543 P.2d 820, 825 (N.M. 1975).  Mr. Painter's claim for negligence per se is based on Ms. Garcia's alleged violation of NMSA 1978, § 30-39-1, which states:

**False report; penalty**

It is unlawful for any person to intentionally make a report to a law enforcement agency or official, which report he knows to be false at the time of making it, alleging a violation by another person of the provisions of the Criminal Code.  Any person violating the provisions of this section is guilty of a misdemeanor.

NMSA 1978, § 30-39-1 (1979).

Mr. Painter agues that a defendant's violation of a statute is an unreasonable act as a matter of law.  This is not an accurate description of the principles governing negligence per se, however, because not every statute can serve as the basis of a negligence per se claim. See FDIC v. Schuchmann, 235 F.3d 1217, 1223 (10th Cir. 2000) (violation of statute cannot provide basis for negligence per se, if so construing statutory violation would be contrary to

15

clear intent of legislature).

The mere existence of a statute or regulation arguably governing the conduct at issue does not entitle the plaintiff to proceed on a theory of negligence per se.  See Valdez v. Cillessen & Son, Inc., 734 P.2d 1258, 1261 (N.M. 1987) (declining to allow negligence per se claim that was based on allegations defendant violated OSHA regulations); Archibeque, 543 P.2d at 825 (negligence per se jury instruction not permitted when it was "doubtful" that legislature intended statute to apply in circumstances alleged by auto accident plaintiff). Lozoya v. Sanchez, cited in Mr. Painter's response, does not support his argument.  In Lozoya, the New Mexico Supreme Court held that a certain traffic law prohibiting "following too closely" had been recognized as providing the basis for a negligence per se claim; it did not hold that *any* statute could serve as the basis for negligence per se.  Lozoya v. Sanchez, 66 P.3d 948, 959 (N.M. 2003).

Mr. Painter's purported negligence per se claim is peculiar in that it is based on a criminal statute that requires intentional and knowing conduct.  If the Court were to accept his negligence per se claim, the burden on Mr. Painter would be increased because he would be required to establish a level of culpability beyond mere negligence in order to prevail on the claim.  To construe section 30-39-1 to require anything less than intentional and knowing conduct would be inconsistent with its express language.

In any event, the Court has concluded that the Amended Complaint does not support an inference of knowing conduct.  The second element of the negligence per se test—a

violation of the statute—is therefore not satisfied by the facts alleged in the Amended Complaint.  In the context of an alleged criminal violation, knowledge cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish.  Tenth Circuit Criminal Pattern Jury Instruction (No. 1.37) (2005 ed.).  The negligence per se claim must be dismissed.

### E.      False Arrest and Imprisonment (Count VII)

The Amended Complaint asserts a claim for false arrest and imprisonment against the Wells Fargo Defendants on the grounds that Ms. Garcia "directed, requested, invited, and encouraged Mr. Painter's false arrest and imprisonment," and that she acted "willfully, recklessly, and wantonly."  [Doc. 4-2, ¶¶ 146, 149.]  The Court concludes that the failure of the Amended Complaint to plausibly plead that Ms. Garcia acted knowingly is fatal to the false arrest and imprisonment claim.

The tort of false imprisonment occurs when a person intentionally confines or restrains another person without his consent and with knowledge that he had no lawful authority to do so.  Santillo v. N.M. Dept. of Pub. Safety, 173 P.3d 6, 10 (N.M. Ct. App. 2007).[5]  Mr. Painter does not allege that the Wells Fargo Defendants themselves confined or restrained him.  Rather, his claim is that Ms. Garcia instigated the arrest by allegedly making false reports to the authorities.

---

[5]A false arrest is merely one way of committing a false imprisonment.   Santillo v. N.M. Dept. of Pub. Safety, 173 P.3d 6, 10 (N.M. Ct. App. 2007).

A private citizen who "instigates" a false arrest can be liable for the tort of false arrest or imprisonment.  Miller v. Stinnett, 257 F.2d 910, 915 (10th Cir. 1958).  The Court is not aware of any dispositive authority that elucidates the scope of instigator liability.[6]  However, a review of the cases that have addressed the issue, even those cited in Mr. Painter's response brief, indicate that something more than providing false information to the police is necessary to impose liability on a private citizen who calls the police.  The following summarizes what appears to be the general consensus on "instigator" liability for false arrest:

> A private citizen who, by affirmative direction, persuasion, or request, procures an unlawful arrest and detention of another is liable for false imprisonment.  If an informer merely states to a peace officer his or her knowledge of a supposed offense and the officer makes the arrest entirely upon the officer's own judgment and discretion, the informer is not liable.  If an informer knowingly gives to an officer false information which is a determining factor in the officer's decision to make an arrest, the informer is liable.

 Nauenburg v. Lewis, 655 N.W.2d 19, 23–24 (Neb. 2003).

Consistent with this summary, one federal district court has described "two paths" to liability for the tort of false arrest: a private citizen can be liable either for specifically requesting the police to arrest someone, or for intentionally providing false information to the police.  Eisnnicher v. Bob Evans Farms Rest., 310 F.Supp.2d 936, 957 (S.D. Ohio 2006) (applying Ohio law); see also Carter v. Aramark Sports & Entm't Svcs., Inc., 835 A.2d 262, 284 (liability for false arrest arises "when one *knowingly* gives false information to a law

---

[6]In Stienbaugh v. Payless Drug Store, Inc., the court's inquiry was limited to determining whether there was sufficient evidence to support the trial court's presumed conclusion that defendants lacked reasonable cause to believe that the plaintiffs were shoplifting; the court did not consider the contours of instigator liability.  Stienbaugh v. Payless Drug Store, Inc., 401 P.2d 104 (N.M. 1965).

enforcement officer....")(emphasis in original)(citation omitted).  Neither "path" is supported by the pleadings in this case.

The Amended Complaint does not allege that Ms. Garcia specifically requested police arrest Mr. Painter.  Procuring a false imprisonment is the equivalent in words or conduct to "Officer, arrest that man!"  Eisnnicher, 310 F.Supp.2d at 957 (quoting White v. Standard Oil Co., 474 N.E.2d 366, 367–68 (Ohio Ct. App. 1984)).  Here, there are no facts to support Mr. Painter's allegation that Ms. Garcia "directed, requested, invited, and encouraged" police to arrest Mr. Painter.

The police officers that responded to the 911 call entered the bank and identified Mr. Painter without encouragement from, or even talking to, Ms. Garcia or any other bank employee.  [Doc. 4-2, ¶¶ 44–47.]  The officers immediately removed Mr. Painter from the building and took him outside where they placed him against a wall.  [Id., ¶ 53.]  They searched his truck [Id., ¶ 54], questioned him [Id., ¶¶ 58–65], seized the check and the envelope [Id., ¶¶ 56–62], and talked to witnesses [Id., ¶¶ 68–69].  After hearing Mr. Painter's side of the story, the police officers expressed skepticism that anyone would sell a car over the Internet or that someone Mr. Painter's age could afford to have both a Mustang and a truck.  [Id., ¶¶ 61–64.]  Mr. Painter requested to be taken to his house a few blocks away so he could show the officers documentation to back up his story.  [Id., ¶¶ 64–67.]  They refused to take him to his house and placed Mr. Painter under arrest.  [Id., ¶¶ 67, 72.]

Although the officers could have initially identified Mr. Painter using the physical

19

description Ms. Garcia provided to the 911 operator, the facts alleged indicate that Ms. Garcia merely stated her knowledge of a supposed offense. It is undisputed that Ms. Garcia discovered that the cashier's check Mr. Painter gave her to inquire about had already been paid. [Doc. 4-2, ¶ 36.] The Amended Complaint alleges that, after rejecting his explanation, the police officers made the decision to arrest Mr. Painter.

As discussed above, even if it is assumed that the information Ms. Garcia provided was materially false, the Amended Complaint does not support an inference that she acted knowingly. Eisnnicher, for example, illustrates the type of conduct necessary to support "instigator" liability. The district court in Eisnnicher found that the defendant restaurant manager could be liable for false imprisonment if he intentionally provided false information about plaintiff customers to the police. Eisnnicher, 310 F.Supp.2d at 958. The evidence on summary judgment supported an inference that the defendant pressed an alarm button, thereby summoning the police, and then invented allegations about the plaintiffs to create a post hoc justification to cover himself for having prematurely activated the alarm. Eisnnicher, 310 F.Supp.2d at 959. There are no such allegations against Ms. Garcia that would support a claim for false arrest.

It is true that at lease one court has reached a contrary result on arguably similar facts. See Deadman v. Valley Nat'l Bank of Ariz., 743 P.2d 961 (Ariz. Ct. App. 1987). In Deadman, a bank employee directed a colleague to telephone the police to report that a customer was attempting to obtain cash from a fraudulent credit card. Deadman, 743 P.2d

at 964.  Police officers arrived and questioned the customer, but released him upon receiving verification that the credit card was valid.  <u>Deadman</u>, 743 P.2d at 965.  The customer brought a claim for false arrest against the bank.  At trial, the judge refused to direct a verdict in favor of the defendant bank despite the fact that no employee expressly requested the arrest or offered any advice about how to handle the situation.  <u>Deadman</u>, 743 P.2d at 965.

The ruling was affirmed on appeal.  After noting the absence of authority illustrating application of the principles of instigator liability, the Arizona Court of Appeals concluded that the facts surrounding the arrest created a reasonable inference of instigation.  <u>Deadman</u>, 743 P.2d 967.  The Arizona court's analysis did not seem to take into account, however, several facts that might have distinguished Deadman's case from one the court relied on for support.  In <u>Thurman v. Cundiff</u>, for example, plaintiff's claim for false arrest against the defendant was supported by allegations of a running dispute between the parties, as well as evidence that the defendant deliberately withheld information from the police that would have tended to exonerate the plaintiff.  <u>Deadman</u>, 743 P.2d at 968 (relying on <u>Thurman v. Cundiff</u>, 580 P.2d 893 (Kan. Ct. App. 1978)).

Furthermore, a key fact distinguishes the <u>Deadman</u> case from the conduct alleged here: the credit card presented to the defendant bank in <u>Deadman</u> was valid.  The bank could easily have determined that the credit card was valid by calling a telephone number to get authorization on the credit card, but did not take that simple step until directed to do so by the police.  <u>Deadman</u>. 743 P.2d at 964.  Rather than attempting to determine whether the card

21

was valid before alerting the authorities, the employee simply summoned the police.  She became apprehensive about plaintiff Deadman because she had just learned from a colleague that another branch had been presented with a fraudulent credit card the night before, though the culprit had been arrested.  The employee then observed that plaintiff Deadman appeared rather young, was pacing, and "looked nervous."  Deadman, 743 P.2d at 963–64.  Defendant Garcia, by contrast, actually determined that the check presented by Mr. Painter was not valid before she called the police.

Finally, the elements of the tort of false imprisonment require that the defendant have "knowledge" that he is without lawful authority.  This Court does not believe that imposing "instigator" liability for false arrest on a private citizen absent knowledge of falsity is consistent with New Mexico law which holds that citizens must have "wide latitude in reporting facts to authorities so as not to discourage the exposure of crime."  WestStar Mortgage Corp., 61 P.3d at 831 (quoting Zamora, 747 P.2d at 929).

Mr. Painter apparently does not disagree that a claim for instigating false arrest must be premised on conduct that is at a minimum, knowing.  [Doc. 12 at 20.]  His argument is that the Amended Complaint alleges Ms. Garcia acted knowingly and is therefore sufficient.  As discussed above, however, the Court concludes that the Amended Complaint does not plausibly plead that Ms. Garcia acted knowingly.  Accordingly, Mr. Painter's claim for false arrest and imprisonment against the Wells Fargo Defendants should be dismissed.

## IV.   CONCLUSION

The Amended Complaint does not support a plausible inference that Ms. Garcia knowingly reported false information to the authorities.  Accordingly, any claims that require her to have acted with knowledge of falsity must fail.

The Amended Complaint does adequately allege negligent conduct.  Thus, the Motion to Dismiss must be denied with respect to claims against the Wells Fargo Defendants that may be established by showing negligent conduct.

**IT IS, THEREFORE, ORDERED** that *Wells Fargo Bank, N.A.'s and Melanie J. Garcia's Motion to Dismiss* [Doc. 8] is **GRANTED in part and DENIED in part.**  Count VII (False Arrest & Imprisonment), Count VIII (Negligence Per Se), and Count XI (Malicious Abuse of Process) are **Dismissed with prejudice.**  The Motion is denied as to Count IX (Negligence) and Count X (Defamation).

**SO ORDERED** this 29th day of February 2008**,** in Albuquerque New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge